# EXHIBIT 1

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

JAMES COOPER and JUANA COOPER,
as Personal Representatives of the ESTATE
OF THOMAS COOPER, a Deceased Minor,

       Plaintiff,

v.

SECHRIST INDUSTRIES, INC., OXFORD HYPERBARIC
OXYGEN THERAPY CENTER, LLC d/b/a OXFORD
HYPERBARIC OXYGEN THERAPY CENTER, LLC, OXFORD
KIDS FOUNDATION, TAMELA PETERSON, JEFFREY
MOSTELLER, GARY MARKEN, ALTEA MOFFITT,
and OFFICE VENTURES TROY I, LLC,

       Defendants.

2025-217729-NP

JUDGE YASMINE I. POLES

Case No.2025-       -NP
Hon.

---

JAMES J. HARRINGTON, IV (P65351)
GREGORY W. WIX (P65424)
KEVIN C. RIDDLE (P57435)
***FIEGER, FIEGER, KENNEY***
***& HARRINGTON, PC***
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
248-355-5555 / 248-355-5148 Fax
j.harrington@fiegerlaw.com
g.wix@fiegerlaw.com
k.riddle@fiegerlaw.com

_____/

## COMPLAINT

**There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action not between these parties arising out of the same transaction or occurrence as alleged in this complaint that is either pending, or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.**

{01861670.DOCX}

NOW COMES, Plaintiffs, JAMES COOPER and JUANA COOPER as Personal Representatives of the Estate of THOMAS COOPER, a Deceased Minor, by and through their attorneys at Fieger, Fieger, Kenney & Harrington, P.C., and with their Complaint, states as follows:

## PARTIES AND JURISDICTION

1.      At all times relevant, young Plaintiff Decedent THOMAS COOPER (5-years-old) was a resident of the City of Royal Oak, County of Oakland, State of Michigan.

2.      At all times relevant, Plaintiff Personal Representatives, JAMES COOPER and JUANA COOPER are residents of the City of Royal Oak, County of Oakland, State of Michigan.

3.      JAMES COOPER and JUANA COOPER are the loving parents of THOMAS COOPER.

4.      That Defendant SECHRIST INDUSTRIES, INC., (hereinafter "SECHRIST") is a Delaware Corporation, doing business in the County of Oakland, State of Michigan. SECHRIST designed, manufactured, sold, maintained and provided training for, the chamber at issue in this matter, which was a Sechrist Model 3300HR bearing serial number 33H00377.

5.      That Defendant OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC d/b/a OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC, (herein referred as "THE OXFORD CENTER") is a Michigan Corporation, doing business in the County of Oakland, State of Michigan.

{01861670.DOCX} 2

6. That Defendant OXFORD CENTER purchased and operated hyperbaric oxygen chambers manufactured by Defendant SECHRIST INDUSTRIES, INC. including the chamber at issue in this matter, which was a Sechrist Model 3200HR bearing serial number 33H00377.

7. That Defendant OXFORD KIDS FOUNDATION, is a Michigan Nonprofit Corporation, doing business in the County of Oakland, State of Michigan.

8. At all times relevant, Defendant TAMELA PETERSON was a resident of the City of Brighton, County of Livingston, State of Michigan.

9. At all times relevant, Defendant JEFFREY MOSTELLER was a resident of the City of Clinton Township, County of Macomb, State of Michigan.

10. At all times relevant, Defendant GARY MARKEN was a resident of the City of Harbor Springs, County of Emmett, State of Michigan.

11. At all times relevant, Defendant ALTEA MOFFITT was a resident of the City of Rochester Hills, County of Oakland, State of Michigan.

12. That Defendant OFFICE VENTURES TROY I, LLC, is a Michigan Corporation, doing business in the County of Oakland, State of Michigan.

13. The acts, omissions, transactions, and/or occurrences giving rise to the injuries complained of herein, arose within the confines of Oakland County, City of Troy, Michigan.

14. That venue is proper in this Honorable Court.

15. That the amount in controversy in this matter greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS, exclusive of costs, interest and attorney fees.

{01861670.DOCX} 3

16.     That this Honorable Court has personal jurisdiction over Defendants herein.

17.     That this Honorable Court has subject matter jurisdiction.

## COMMON FACTUAL ALLEGATIONS

18.     Plaintiff restates and re-alleges the foregoing as if fully set forth herein.

19.     Generally, hyperbaric oxygen therapy (herein referred as "HBOT") increases delivery of oxygen to the body by providing pure oxygen in an enclosed space with higher than normal air pressure. During HBOT a patient inhales 100% pure oxygen greater than normal atmospheric pressure inside a highly pressured chamber.

20.     HBOT elevates the concentration of oxygen in hemoglobin and plasma. Based on its solubility under pressure increases the diffusion gradient for its delivery deeper into tissues, which is the main mechanism of HBOT. Ultimately the increases in dissolved oxygen generated by hyperbaric therapy may have several physiologic effects that can change tissue responses to numerous physiological changes. According to the U.S. Food & Drug Administration (FDA) "[t]he increased air pressure in the chamber helps the lungs collect more oxygen. Getting more oxygen to the tissues that need it can help the body heal and fight certain infections."

21.     The FDA regulates both the oxygen used in HBOT and the hyperbaric chambers and has only approved hyperbaric treatment for the following 13 conditions:

{01861670.DOCX} 4

- Air and gas bubbles in blood vessels
- Anemia (severe anemia when blood transfusions cannot be used)
- Burns (severe and large burns treated at a specialized burn center)
- Carbon monoxide poisoning
- Crush injury
- Decompression sickness (diving risk)
- Gas gangrene

- Hearing loss (complete hearing loss that occurs suddenly and without any known cause)
- Infection of the skin and bone (severe)
- Radiation injury
- Skin graft flap at risk of tissue death
- Vision loss (when sudden and painless in one eye due to blockage of blood flow)
- Wounds (non-healing, diabetic foot ulcers)

22.     Since 1972, Defendant SECHRIST has designed, manufactured, sold, maintained and provided training for hyperbaric chambers.  According to their website, they claim to have pioneered "work in hyperbaric oxygen therapy (HBOT), [and] revolutionized the treatment of conditions such as decompression sickness, chronic wounds, and carbon monoxide poisoning… , [and have a] commitment to innovation, quality, and safety in hyperbaric medicine … [and are] a benchmark in the field, with its state-of-the-art hyperbaric chambers setting industry standards.

23.     Defendant SECHRIST designed and manufactured its Model 4100 H/HR monoplace hyperbaric chamber, which was approved by the FDA as a Class II device. This model served as a "predicate device" for Models 3300H/HR and 3600H/HR.  A predicate device (4100H/HR) is a legally marketed medical device used by the FDA as a point of comparison for new medical devices (3300H/HR and 3600H/HR) to demonstrate substantial equivalence through the 510(k) premarket notification process.[1]

---

[1] Each person who wants to market in the U.S., a Class I, II, and III device intended for human use, for which a Premarket Approval application (PMA) is not required, must submit a 510(k) to FDA unless the device is exempt from 510(k) requirements of the Federal Food, Drug, and Cosmetic Act (the FD&C Act) and does not exceed the limitations of exemptions in .9 of the device classification regulation chapters (e.g., 21 CFR 862.9, 21 CFR 864.9). There is no 510(k) form; however, 21 CFR 807 Subpart E describes requirements for a 510(k) submission. Before marketing a device, each submitter must receive an order. in the form of a letter, from FDA which finds the device to be substantially equivalent (SE) and states that the device can be marketed in the U.S. This order "clears" the device for commercial distribution

24.     On May 30, 2014, the FDA approved the 510(k) premarket notification the Model 3300H/HR.   Importantly, the approval letter sent to Defendant SECHRIST specifically stated that "[p]lease be advised that FDA's issuance of a substantial equivalence determination does not mean that FDA has made a determination that your device complies with other requirements of the Act or any Federal statutes and regulations administered by other Federal agencies."

25.     Defendant SECHRIST designed, manufactured, sold, maintained and provided training for the Model 3300HR bearing serial number 33H00377 at issue in this case.

26.     The Model 3200HR is a monoplace chamber, which is a hard-sided, acrylic tube that treats one patient at a time. This chamber was purposely designed, manufactured and sold without a fire suppression system, a deluge system, an automatic fire detection system, an effective emergency extraction system, warnings regarding fire and/or explosion hazards, warnings regarding prohibited items, warnings regarding electrical hazards, warnings regarding lack of emergency extraction system, or warnings indicating the chamber had no fire suppression system.

27.     At some time prior to THOMAS COOPER's death, Defendant SECHRIST sold/distributed the hyperbaric chamber at issue to Defendant OXFORD CENTER in the above-mentioned defective condition.

28.     Upon information and belief, Defendant SECHRIST allegedly serviced the hyperbaric chamber at issue in this case and provided support services to Defendant OXFORD CENTER.  However, at no time did Defendant SECHRIST properly design, manufacture, sale, or maintain the chamber, including, but not limited to providing a

remedy the above-mentioned defects, nor did they undertake any efforts to ensure that patients or staff at the OXFORD CENTER, would be properly advised of the inherent and substantial fire hazards or the risk of death patients faced each time they entered the chamber.

29.    Defendant OXFORD CENTER publicly and deceitfully advertised and sold treatment plans for hyperbaric treatment for over 100 conditions according to their website, including, but not limited to:

- Attention Deficit Disorder
- AIDS /HIV
- ALS
- Alzheimer's
- Anal Fissure
- Anxiety
- Arthritis
- Autism / Autistic Spectrum
- Bell's Palsy
- Bladder
- Bladder Infection
- Interstitial Cystitis
- Bone
- Fractures
- Osteomyelitis
- Brain Injury
- Traumatic Brain Injury
- Hypoxic/Anoxic Brain Injury
- Burns
- Cancer
- Carbon Monoxide Poisoning
- Cerebral Palsy
- Cerebral Hypoxia
- Immune Dysfunction
- Chronic Fatigue Syndrome
- Encephalomyelitis
- Epilepsy / Seizure Disorders
- Femoral Head Necrosis
- Fetal Alcohol Syndrome
- Fibromyalgia
- Gastrointestinal Diseases
- Crohn's Disease
- Inflammatory Bowel Disease
- Intestinal Obstruction
- Ulcerative Colitis
- Healthy Aging
- Hearing Loss
- Heart
- Heart Attack
- Hypertension
- Atherosclerosis
- Hepatitis
- Infection
- Bacterial Infection
- Fungal Infection
- Inflammation
- Injury Healing
- Liver Damage
- Lupus
- Lyme Disease
- Glaucoma
- Ischemic Optic Neuropathy
- Macular Degeneration
- Macular Detachment
- Macular Edema
- Retinal Artery/Vein Occlusion
- Retinitis Pigmentosa
- Scleral necrosis
- Pancreatitis
- Pain & Inflammation
- Parkinson's Disease
- Peripheral Nerve Damage
- Nerve Regeneration
- Stem-cell growth
- Post-Polio Syndrome
- Radiation
- Renal Failure
- Calciphylaxis
- RSD
- Rheumatic Diseases
- Sickle-Cell Disease
- Skin Grafts/Flaps
- Spider Bite
- Spinal Cord Injury
- Sports Injury
- Concussion

- Chronic Pain &Inflammation
- Coma
- Concussion
- COVID-19 (Post COVID Long Haulers)
- Crush injury,
- Compartment syndrome
- Degenerative Disc Disease
- Dementia
- Depression
- Diabetes
- Diabetic Retinopathy

- Macular Degeneration
- Memory Loss
- Metabolic Syndrome
- Hyperlipidemia
- Steatohepatitis
- Migraine
- Multiple Chemical Sensitivity
- Multiple Sclerosis
- Near Drowning
- Neuropathy
- Ophthalmology
- Anterior Segment Ischemia
- Corneal Edema

- Stroke
- Surgery
- Minimizing Surgical Complications
- Organ Replantation
- Organ Transplants
- Post-Surgical Wound Healing
- Susac Syndrome
- Systemic Shock
- Thermal Burns
- Traumatic Brain Injury
- Concussion
- Wound Healing

30. In fact, it was the policy, custom and practice that the OXFORD CENTER, would treat whatever condition as long as it put bodies in the chambers.

31. Defendant OXFORD CENTER offered treatment for the above-mentioned conditions even though the FDA had only approved treatment for 13 conditions due to the unproven efficacy of treatment for any other condition.

32. The OXFORD CENTER Defendants were essentially conducting "human experiments" on young THOMAS COOPER and countless others on a daily basis.

33. Likewise, upon information and belief, Defendant SECHRIST knew the defective chambers they were providing were being used in "human experiments" for numerous non-FDA approved conditions. Upon information and belief, Defendant SECHRIST explicitly/implicitly encourage these human experiments as that meant more chambers would be produced to "treat" the ever-growing list of non-FDA approved conditions. Their hunger for profits ignored the cost in human suffering and death.

34.     On December 6, 2024, OXFORD CENTER nurse Elina Giacalone completed the General Discovery Form for THOMAS COOPER, as part of the OXFORD CENTER intake process.   The stated goals were to address "ADHD Symptoms, Hyperactivity, Sleep and Overall Health".   HBOT treatment for these conditions were not FDA approved.   Furthermore, the OXFORD CENTER, and all of the OXFORD CENTER Defendants knew or should have known that young THOMAS COOPER'S conditions were not approved ailments for HBOT treatment.

35.     The OXFORD CENTER's "Hyperbaric Oxygen Therapy Consent" form specifically and intentionally failed to warn Plaintiffs that hyperbaric oxygen therapy posed a serious risk of death if a fire or explosion occurred during treatment.

36.     On January 31, 2025, Plaintiff THOMAS COOPER, was placed in chamber treatment at THE OXFORD CENTER located at 165 Kirts Blvd, Suite 500, Troy, Michigan 48084.

37.     Specifically, THOMAS COOPER was placed in the Sechrist Hyperbaric Chamber Model Number 3200HR bearing serial number 33H00377.

38.     In addition, to all Defendants failing to warn Thomas' parents, JAMES COOPER and JUANA COOPER of the deadly hazards posed by the Sechrist chamber, Defendant OXFORD and their Defendant employees, failed to take any reasonable safety measures to mitigate the deadly hazards.

39.     On January 31, 2025, a fire started in the Sechrist chamber and THOMAS COOPER was burned to death over the course of minutes.

40.    The Sechrist chamber was purposely designed so that an emergency extraction was impossible.  Due to this design, Sechrist had actual knowledge that a fire inside their chamber would result in death.

41.    It has been well known in the industry that in monoplace hyperbaric chambers, such as the Sechrist chamber, fire hazard is fatal due to the combination of an oxygen-rich, high-pressure environment with the inability to depressurize the vessel quickly for rescue.  In essence, it becomes a death chamber. (see photographs):



42.    Defendant SECHRIST manufactured, designed, tested, and placed into the stream of commerce its monochamber with full knowledge that it was, in essence, a coffin waiting to ignite. Defendant SECHRIST was not ignorant of the risks; rather, it was acutely aware that the introduction of a single spark, arc, or ignition source in its chamber—pressurized with pure oxygen—would create an inferno from which no patient could possibly escape alive.

{01861670.DOCX}  10

43. Despite this knowledge, Defendant SECHRIST willfully and recklessly pushed this device onto "treatment facilities" across the country, cloaking it with the illusion of therapeutic benefit while knowing it was fatally defective in design, wholly inadequate in safety systems, and catastrophically unfit for its intended purpose.

44. All of the Defendants knew that once a fire starts, it becomes an uncontrollable inferno in seconds, and the pressurized door cannot be opened until the chamber has slowly decompressed.

45. With this actual knowledge, the Defendants did nothing to mitigate this deadly hazard and failed to ever warn James and Juana that their 5-year-old son, Thomas would certainly be killed if the chamber caught fire.

46. In addition to this actual knowledge, all of the Defendants actively concealed the dangers by omitting any mention of fire and/or explosion hazards in any consent forms and/or user manuals.

47. Upon information and belief, Defendants knew that many "patients" would forgo HBOT if they knew that each time they entered the chamber a simple spark of static electricity would result in them being burned alive inside the chamber with no possibility of escape. As such, the conscious disregard of providing warnings was absolutely critical to the Defendants' business model which chose profits over people, consigning patients to be strapped into a chamber that became a human incinerator the instant a spark ignited.

48. The Defendants' conduct was not mere negligence. It was conscious, deliberate, and depraved.  The Defendants knew with absolute certainty that if a fire occurred in one of its chambers, the patient inside would be burned alive, with zero chance of survival.

49. Knowing this, Defendant SECHRIST still refused to redesign, refused to recall, refused to warn, and refused to take any action to prevent the inevitable.

50. Knowing this, the OXFORD CENTER Defendants refused to mitigate any of the dangers, refused to warn, and refused to take any action to prevent the inevitable.

51. The death of 5-years-old THOMAS COOPER was not a tragic accident. It was a foreseeable, inevitable, and virtually certain result of Defendants' callous indifference to human life. Young THOMAS COOPER paid the ultimate price for Defendants' corporate greed.

## COUNT I – NEGLIGENT AND/OR GROSSLY NEGLIGENT PRODUCTION DEFENDANT SECHRIST INDUSTRIES, INC.

52. Plaintiff restates and re-alleges the forgoing as if fully set forth herein.

53. Defendant SECHRIST INDUSTRIES, INC. owed a duty to Plaintiff to place a reasonably safe hyperbaric oxygen chamber into the stream of commerce free of defects.

54. Defendant SECHRIST INDUSTRIES, INC. designed, tested, approved, manufactured, produced, and serviced the hyperbaric oxygen chamber in a negligent and/or grossly negligent manner in that it failed to exercise reasonable care to prevent the hyperbaric oxygen chamber from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner in one or more of the following ways:

{01861670.DOCX} 12

a.   By producing, assembling, specifying, designing and/or manufacturing a hyperbaric oxygen chamber that contained manufacturing, installation, assembly, design and/or "production" defects that caused the deadly fire at issue.

b.   By producing, assembling, specifying, designing and/or manufacturing a hyperbaric oxygen chamber that contained manufacturing, installation, assembly, design and/or "production" defects that utterly failed to warn about the inherent hazards, including, fire and electrical hazards.

c.   By producing, assembling, specifying, designing and/or manufacturing a hyperbaric oxygen chamber that contained manufacturing, installation, assembly, design and/or "production" defects that failed to mitigate the well-known and deadly risk of fire.

d.   By negligently failing to adequately test and failing to use adequate quality control procedures to alert it to design, manufacturing and or "production" defects.

e.   Other acts of negligence that may become known through the course of discovery.

55.   Defendant SECHRIST INDUSTRIES, INC. expected the hyperbaric oxygen chamber to reach and it did reach the consumer without substantial change to the condition in which Defendant(s) produced and sold it.

56.   That as a direct and proximate consequence of the negligent and/or grossly negligent acts and/or omissions of the Defendant SECHRIST INDUSTRIES, INC, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

a.   Conscious physical pain and suffering;

b.   Emotional distress and mental anguish;

c.   Loss of enjoyment of life;

d.   Medical and hospital expenses;

e.   Funeral and burial expenses;

{01861670.DOCX} 13

f.  Loss of society and companionship of Decedent;

g.  Loss of love, affection, guidance, comfort, and companionship;

h.  Loss of parental expectation and joy of raising the child;

i.  Psychological injuries to other surviving family members;

j.  Loss of prospective services and support;

k.  Loss of future financial contributions and support;

l.  Loss of household services;

m. Counseling, therapy, and psychiatric expenses;

n.  Death;

o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p.  Any exemplary damages;

q.  Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## COUNT II – BREACH OF IMPLIED WARRANTY
## DEFENDANT SECHRIST INDUSTRIES, INC.

57.  Plaintiff restates the above paragraphs as if fully set forth herein.

58.  Defendant SECHRIST INDUSTRIES, INC., knew or had reason to know the particular purposes for which the hyperbaric oxygen chamber was to be used and that purchasers and users such as Plaintiff would rely on Defendant(s) skill or judgment

{01861670.DOCX}  14

in designing, testing, manufacturing, installing and/or furnishing goods suitable for such purposes and uses.

59.     The hyperbaric oxygen chamber was not fit for the particular purposes for which they were intended and for which they were used.

60.     The defective condition of the hyperbaric oxygen chamber constitutes a breach by Defendant SECHRIST INDUSTRIES, INC. of express or implied warranties, rendering them liable for the injuries sustained by the Plaintiff.

61.     That as a direct and proximate consequence of the breach of implied warranty by Defendant SECHRIST INDUSTRIES, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

      a.  Conscious physical pain and suffering;

      b.  Emotional distress and mental anguish;

      c.  Loss of enjoyment of life;

      d.  Medical and hospital expenses;

      e.  Funeral and burial expenses;

      f.  Loss of society and companionship of Decedent;

      g.  Loss of love, affection, guidance, comfort, and companionship;

      h.  Loss of parental expectation and joy of raising the child;

      i.  Psychological injuries to other surviving family members;

      j.  Loss of prospective services and support;

      k.  Loss of future financial contributions and support;

      l.  Loss of household services;

m. Counseling, therapy, and psychiatric expenses;

n. Death;

o. Any and all other damages allowed under the Michigan Wrongful Death Act;

p. Any exemplary damages;

q. Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## COUNT III – GROSS NEGLIGENCE / ACTUAL KNOWLEDGE
## ALL DEFENDANTS

62.    Plaintiff restates the above paragraphs as if fully set forth herein.

63.    The hyperbaric oxygen chamber was defective at the time it was "produced".

64.    Defendants had actual knowledge of the defect and of the substantial likelihood that the defect(s) would cause Plaintiff injuries and death.

65.    Defendants willfully disregarded that knowledge.

66.    That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

a.  Conscious physical pain and suffering;

b.  Emotional distress and mental anguish;

c.  Loss of enjoyment of life;

d.  Medical and hospital expenses;

e.  Funeral and burial expenses;

f.  Loss of society and companionship of Decedent;

g.  Loss of love, affection, guidance, comfort, and companionship;

h.  Loss of parental expectation and joy of raising the child;

i.  Psychological injuries to other surviving family members;

j.  Loss of prospective services and support;

k.  Loss of future financial contributions and support;

l.  Loss of household services;

m. Counseling, therapy, and psychiatric expenses;

n.  Death;

o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p.  Any exemplary damages;

q.  Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## <u>COUNT IV – BREACH OF EXPRESS WARRANTY</u>
## <u>ALL DEFENDANTS</u>

67.     Plaintiff restates the above paragraphs as if fully set forth herein.

68.     Defendants made representations and/or statements that the product was free from defect and/or fit for its intended purpose.

69.     Defendants breached the express warranties provided to Plaintiff(s).

70.     That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

      a. Conscious physical pain and suffering;

      b. Emotional distress and mental anguish;

      c. Loss of enjoyment of life;

      d. Medical and hospital expenses;

      e. Funeral and burial expenses;

      f. Loss of society and companionship of Decedent;

      g. Loss of love, affection, guidance, comfort, and companionship;

      h. Loss of parental expectation and joy of raising the child;

      i. Psychological injuries to other surviving family members;

      j. Loss of prospective services and support;

      k. Loss of future financial contributions and support;

      l. Loss of household services;

      m. Counseling, therapy, and psychiatric expenses;

      n. Death;

o. Any and all other damages allowed under the Michigan Wrongful Death Act;

p. Any exemplary damages;

q. Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## COUNT V – FAILURE TO WARN
## ALL DEFENDANTS

71.    Plaintiff restates the above paragraphs as if fully set forth herein.

72.    Defendants knew of should have known of the risk of injury with respect to the foreseeable use and/or misuse of its product.

73.    Defendants did not provide effective communication of adequate, accurate information essential for informed consent and for the safe use of the product.

74.    That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

a. Conscious physical pain and suffering;

b. Emotional distress and mental anguish;

c. Loss of enjoyment of life;

d. Medical and hospital expenses;

{01861670.DOCX} 19

e.  Funeral and burial expenses;

f.  Loss of society and companionship of Decedent;

g.  Loss of love, affection, guidance, comfort, and companionship;

h.  Loss of parental expectation and joy of raising the child;

i.  Psychological injuries to other surviving family members;

j.  Loss of prospective services and support;

k.  Loss of future financial contributions and support;

l.  Loss of household services;

m.  Counseling, therapy, and psychiatric expenses;

n.  Death;

o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p.  Any exemplary damages;

q.  Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## COUNT VI – PREMISES LIABILITY
## DEFENDANT OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC d/b/a OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC AND OFFICE VENTURES TROY I, LLC

75.  Plaintiff restates the above paragraphs as if fully set forth herein.

{01861670.DOCX}  20

76. At all times relevant, Plaintiff Decedent, THOMAS COOPER, was an invitee on said premises as he was undergoing treatment with THE OXFORD CENTER on January 31, 2025.

77. Defendants THE OXFORD CENTER and/or OFFICE VENTURES TROY, LLC, were the owners of said property had a nondelegable duty to the general public and to Plaintiff in particular as an invitee to maintain said premises in a reasonable safe condition, and to:

    a. Exercise reasonable care and prudence to render the premises safe for invitees;

    b. Expect that a person invited on its premises would not discover or realize the danger of the aforesaid inadequate condition of the premises or would fail to protect themselves against it;

    c. Remove hazardous conditions in a reasonably prudent manner;

    d. Maintain the premises in a safe condition;

    e. To take reasonable care to know the actual condition of its premises and in the exercise of reasonable care, either remedy, remove, or correct any unsafe or dangerous condition(s), or adequately warn the invitee of the presence of a dangerous condition(s) on the premises;

    f. Exercise reasonable care to diminish the hazards on said premises and to take reasonable and appropriate measures in light of the circumstances, then and there existing.

78. Defendants THE OXFORD CENTER and/or OFFICE VENTURES TROY, LLC, breached its duties owed to Plaintiff.

    a. Failing to exercise reasonable care and prudence to render the premises safe for business invitees;

{01861670.DOCX} 21

b. Failing to warn Plaintiff and other invitees of the dangerous and hazardous condition of the premises and failing to remedy the dangerous conditions about the premises, when it was economically feasible to do so;

c. Failing to remove hazardous conditions and/or equipment in a reasonably prudent manner;

d. Failing to maintain the premises in a safe condition;

e. Failing to remove, correct or prevent the existence of said dangerous condition when it was known, or through the exercise of reasonable care should have been known, that said condition would cause a person to fall and be injured;

f. Failing to take reasonable care to know the actual condition of its premises and in the exercise of reasonable care, either remedy, remove, or correct the condition, or adequately warn the invitee of the presence of a dangerous condition(s) on the premises;

g. Other violations as may become known

79.    That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

a. Conscious physical pain and suffering;

b. Emotional distress and mental anguish;

c. Loss of enjoyment of life;

d. Medical and hospital expenses;

e. Funeral and burial expenses;

f. Loss of society and companionship of Decedent;

g. Loss of love, affection, guidance, comfort, and companionship;

h. Loss of parental expectation and joy of raising the child;

{01861670.DOCX} 22

i.  Psychological injuries to other surviving family members;

j.  Loss of prospective services and support;

k.  Loss of future financial contributions and support;

l.  Loss of household services;

m. Counseling, therapy, and psychiatric expenses;

n.  Death;

o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p.  Any exemplary damages;

q.  Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

**COUNT VII – NEGLIGENCE and/or GROSS NEGLIGENCE**
**DEFENDANT OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC d/b/a OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC, TAMELA PETERSON, JEFFREY MOSTELLER, GARY MARKEN, AND ALTEA MOFFITT**

80.     Plaintiff restates the above paragraphs as if fully set forth herein.

81.     Defendants made representations and/or statements that the product was free from defect and/or fit for its intended purpose.

82.     Defendants failed to warn of the inherent and deadly hazards associated with monoplace hyperbaric chambers.

{01861670.DOCX} 23

83.     Defendants failed to mitigate the inherent and deadly hazards before placing THOMAS COOPER in the chamber.

84.     Defendants failed to properly and quickly extract THOMAS COOPER from the Chamber once it became engulfed in fire.

85.     That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

    a.  Conscious physical pain and suffering;

    b.  Emotional distress and mental anguish;

    c.  Loss of enjoyment of life;

    d.  Medical and hospital expenses;

    e.  Funeral and burial expenses;

    f.  Loss of society and companionship of Decedent;

    g.  Loss of love, affection, guidance, comfort, and companionship;

    h.  Loss of parental expectation and joy of raising the child;

    i.  Psychological injuries to other surviving family members;

    j.  Loss of prospective services and support;

    k.  Loss of future financial contributions and support;

    l.  Loss of household services;

    m. Counseling, therapy, and psychiatric expenses;

    n.  Death;

    o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p. Any exemplary damages;

q. Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

## COUNT VIII
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION
## DEFENDANT OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC d/b/a
## OXFORD HYPERBARIC OXYGEN THERAPY CENTER, LLC

86. Plaintiff restates the above paragraphs as if fully set forth herein.

87. On the above date, Defendants JEFFREY MOSTELLER, GARY MARKEN, and ALTEA MOFFITT were employees, and/or agents of THE OXFORD CENTER.

88. At the time of the incident, Defendants JEFFREY MOSTELLER, GARY MARKEN, and ALTEA MOFFITT were in the course and scope of their employment with THE OXFORD CENTER.

89. As the employer of Defendants JEFFREY MOSTELLER, GARY MARKEN, and ALTEA MOFFITT, Defendant THE OXFORD CENTER is responsible for the negligent actions of its employee, agent, and/or contractor.

90. At the time of the above incident, Defendant THE OXFORD CENTER vicariously through their employee, agent, and/or contractor, Defendants JEFFREY MOSTELLER, GARY MARKEN, and ALTEA MOFFITT, owed duties to the general

{01861670.DOCX}  25

public, but especially to THOMAS COOPER, to perform Defendant's duties in a non-negligent manner.

91. At all times, Defendant THE OXFORD CENTER, through its employee, agent, and/or contractor, breached its duty to exercise ordinary care in one or more of the following ways:

a. Failure to ensure THE OXFORD CENTER's employees, agents, and/or contractors, were properly trained, licensed and/or supervised to operate a hyperbaric oxygen chamber as the one involved in the fatal incident;

b. Failure to warn the Plaintiff Decedent and his parent(s) prior to the incident;

c. Failure to hire, manage, supervise and train its employees, and/or agents who were competent to operate, inspect, and maintain its hyperbaric oxygen chambers in a reasonable manner;

d. Failure to provide safety devices to its employees, and/or agents;

e. Failure to create, implement, and enforce an inspection and maintenance policy and procedure to prevent the operation of unsafe hyperbaric oxygen chambers;

f. Failure to create, implement, and enforce policies and procedures to prevent from incidents, such as the incident complained of herein;

g. Failure to hire employees who are competent and capable of acting reasonably under the circumstances, including emergency extractions;

h. Failure to conduct adequate background checks on employees;

i. Failure to conduct adequate criminal background checks on employees;

j. Failure to properly train employees in emergency situations involving hyperbaric oxygen chambers;

k. Failure to otherwise act reasonably under the circumstances;

l.  Failure to obey all applicable National Board of Diving and Hyperbaric Medical Technology standards, practices, protocols; and

m.  All other breaches of duty identified in deposition testimony and/or answers to interrogatories and/or all other discovery, and all other breaches that become known throughout litigation and all of which is hereby adopted by reference.

92.     That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff Decedent, Plaintiff Decedent, THOMAS COOPER and his legal heirs, suffered from the following damages, including, but not limited:

a.  Conscious physical pain and suffering;

b.  Emotional distress and mental anguish;

c.  Loss of enjoyment of life;

d.  Medical and hospital expenses;

e.  Funeral and burial expenses;

f.  Loss of society and companionship of Decedent;

g.  Loss of love, affection, guidance, comfort, and companionship;

h.  Loss of parental expectation and joy of raising the child;

i.  Psychological injuries to other surviving family members;

j.  Loss of prospective services and support;

k.  Loss of future financial contributions and support;

l.  Loss of household services;

m.  Counseling, therapy, and psychiatric expenses;

n.  Death;

o.  Any and all other damages allowed under the Michigan Wrongful Death Act;

p.  Any exemplary damages;

q.  Any and all other damages which may become known throughout the passage of time and/or the course of discovery.

WHEREFORE Plaintiff prays for an award of damages to be fixed by the trier of fact in an amount that greatly exceeds ONE HUNDRED MILLION and 00/100 ($100,000,000.00) DOLLARS against Defendants.  Additionally, Plaintiff asks for costs of this action, all pre-judgment and post-judgment interest as provided by law and such other relief as the Court deems appropriate.

Respectfully submitted:

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

*/s/ Gregory W. Wix*

_____
JAMES J. HARRINGTON, IV (P65351)
GREGORY W. WIX (P65424)
KEVIN C. RIDDLE (P57435)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
248-355-5555 / 248-355-5148 Fax

Dated:  September 22, 2025

{01861670.DOCX} 28