UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE INSURANCE
COMPANY OF FLORIDA, *et al.*,

        Plaintiffs,

v.

OXFORD HYPERBARIC
OXYGEN THERAPY CENTER
LLC D/B/A THE OXFORD
CENTER, *et al.*

        Defendants.

_____ /

Case No. 25-13720

Hon. F. Kay Behm
United States District Judge

## OPINION AND ORDER DENYING DEFENDANTS JAMES AND JUANA COOPERS' MOTION TO DISMISS OR STAY (ECF No. 16)

## I.    PROCEDURAL HISTORY

This is a declaratory judgment action in which Plaintiff Nationwide Insurance seeks rulings on its duties to defend and indemnify its insureds in connection with an ongoing state court civil action arising from a January 31, 2025, hyperbaric oxygen chamber fire that killed five-year-old Thomas Cooper. The underlying wrongful death and products/premises liability action was brought by James and Juana Cooper on behalf of their son's estate against Defendants Oxford

1

Hyperbaric Oxygen Therapy Center, Tamela Peterson, Jeffrey Mosteller, Gary Marken, and Aleta Moffitt (the "Oxford Defendants"), among others, in Oakland County Circuit Court, Civil Action No. 2025-217729.  There are also state criminal proceedings involving each of those individual defendants for their role in Thomas Cooper's death.  The Oakland County Circuit Court has stayed its civil action in light of the criminal actions, though the parties also indicated at oral argument that the Oakland County court has partially lifted that stay in order for limited discovery to commence.  ECF No. 16, PageID.355.

The state court plaintiffs, James and Juana Cooper (the "Cooper Defendants"), who are named as Defendants in this matter, seek to dismiss this case in an exercise of the court's discretion to abstain from jurisdiction over declaratory judgments, or in the alternative to stay this action pending completion of the state court proceedings.  This matter is before the court on their motion to abstain and dismiss.  ECF No. 16.

The court **DENIES** the motion for the reasons explained below.

## II.   FACTUAL BACKGROUND

For purposes of this motion, the following facts are taken from the federal and state complaints and are accepted as true.  On January 31, 2025, five-year-old Thomas Cooper was killed in a catastrophic fire inside a hyperbaric oxygen chamber at The Oxford Center in Troy, Michigan.  His parents, James and Juana Cooper, acting as Personal Representatives of his estate, filed a wrongful death action in Oakland County Circuit Court against the chamber manufacturer, the premises owner, and the individuals and company operating the chamber.

The Oxford Center "sold treatment plans for hyperbaric treatment for over 100 conditions[.]"  ECF No. 1, PageID.5.  In December 2024, a nurse working at the Center completed the intake process for Thomas Cooper, and the stated goals of the treatment for Thomas were to address "ADHD Symptoms, Hyperactivity, Sleep and Overall Health."  *Id.* at PageID.6.  Hyperbaric oxygen therapy, referred to as "HBOT," was not approved by the FDA for treating any of these conditions.  A hyperbaric chamber is a pressurized, oxygen-rich environment, and operators lack the ability to depressurize the vessel quickly.  ECF No. 1-2, PageID.41.  A single spark can ignite the entire oxygenated chamber,

and when a fire starts emergency extraction is impossible.  On January 31, 2025, a fire started in the chamber and Thomas Cooper was burned to death over the course of minutes.

Plaintiff Nationwide Insurance insured the Oxford Hyperbaric Oxygen Therapy Center under a Businessowners policy and Umbrella policy.  The relevant portion, for purposes of this motion, is the "professional services" exclusion, which reads as follows:

## 2.  EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:

. . .

### v.  Professional Services

"Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction.  This exclusion includes, but is not limited to, any:

. . .

(4) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

. . .

This exclusion applies even if the claims allege

4

> negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the rendering or failure to render of any professional service.

ECF No. 1-3, PageID.142, 147-48.[1]

Nationwide, which is not a party to the underlying tort action, subsequently filed this declaratory judgment action seeking rulings that it owes no duty to defend or indemnify the Oxford Defendants and seeking reimbursement of its defense costs thus far.  Nationwide's claims turn on whether Oxford Defendants' alleged conduct constitutes professional services under the exclusion.

Although not strictly relevant to any ruling here, it is worth noting for background that Nationwide is not the only insurer involved in the underlying action.  Arch Insurance provided the Oxford Defendants with professional liability coverage, and is actively

---

[1] Nationwide's Complaint, and Defendants' briefing, addresses other sections of this policy which might also exclude coverage.  ECF No. 1, PageID.26; ECF No. 16, PageID.356.  Nationwide's response brief narrowed the issue solely to the professional services exclusion.  ECF No. 20, PageID.452.  The parties at oral argument agreed this was the proper framing, and the court ignores the other arguments.

participating in the defense of the state civil case.  ECF No. 1, PageID.28.

## III.  ANALYSIS

This is a one-count declaratory judgment action.  The Declaratory Judgment Act provides that, in actual cases or controversies, a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant."  *Wilton*, 515 U.S. at 287 (internal citations omitted).  The Court has further explained that the broad discretion given to district courts includes an alternative to dismissal; accordingly, district courts may also enter a stay of the federal action, pending resolution of the state court proceeding.  *Brillhart*, 316 U.S. at

495; *Wilton*, 515 U.S. at 282-83 (discussing *Brillhart* and appropriate inquiry for whether or not to enter a stay or to dismiss a declaratory judgment at the outset).  Thus, the Declaratory Judgment Act provides district courts with jurisdiction over such actions, but the court is "under no compulsion to exercise that jurisdiction." *Brillhart*, 316 U.S. at 494.  District courts are vested with discretion to grant or abstain from granting declaratory relief because they can determine the "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution." *Wilton*, 515 U.S. at 289.

This doctrine is referred to as *Wilton-Brillhart* abstention, and in determining whether to exercise jurisdiction over the declaratory action, a district court balances five factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

> (5) whether there is an alternative remedy which
> is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.,* 746 F.2d 323, 326 (6th Cir. 1984); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  There is no particular weight to be given to any one factor.  The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced."  *Scottsdale*, 513 F.3d at 563.

## A.    Whether the declaratory action would settle the controversy

The first factor to consider is whether the district court's judgment would settle the controversy.  The Sixth Circuit has said that "[t]wo lines of precedent seem to have developed . . . regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability.  One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. . . . .  A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in

state court." *Scottsdale*, 513 F.3d at 555. "The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios." *Id.* Explaining one such example, the Sixth Circuit noted a case in which it found that a declaratory judgment would *not* resolve the controversy. In that case, it "focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. We noted that the question of employment status was already being considered in two separate state court proceedings. We also registered our concern that the plaintiff in the state tort action was not made a party to the declaratory judgment action and thus any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action." *Id.* at 556 (cleaned up). While the two lines of precedent remain good law, the Sixth Circuit has since reaffirmed that it is not an abuse of discretion to conclude that a declaratory judgment regarding coverage

9

does "settle the controversy" because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019)

Here, this declaratory judgment action regarding coverage would "settle the controversy" over Nationwide's duty to defend and indemnify the Oxford Defendants.  Further, the plaintiffs in the state tort action are parties to this action, so at least one of the concerns identified about the ability of this court to settle the controversy is not present here; this court's judgment on the coverage issue would settle that point once and for all.  *Compare Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004) (finding jurisdiction improper when "any judgment in the federal court would not be binding as to" the nonparty state court plaintiff).  It is also important that Nationwide is not a party to the state court action, and all appear to agree that it cannot be joined as a party.  The coverage question is therefore unanswerable in that proceeding and will not be settled outside this action.  *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (approving the exercise of jurisdiction where the insurer "was not a

party to the state court action, and neither the scope of insurance coverage nor the obligation to defend was before the state court").

The Cooper Defendants' primary argument – both in this factor and across the factors generally – is that factual issues being litigated in state court prevent this court from being able to definitively settle the controversy: "the federal action cannot resolve the underlying liability issues, causation questions, or factual disputes that drive the coverage analysis. . . . [W]hether the claims arise from operational or professional conduct—are [] being actively litigated in state court and remain unresolved." ECF No. 16, PageID.358. Defendants argue, in sum, that the scope of the professional services exclusion in this case is a fact-based question of state law. *See, e.g.*, *Scottsdale*, 513 F.3d at 555.

The court disagrees with this framing. It is undisputed that the Oxford Center and its named employees used a hyperbaric chamber to treat Thomas Cooper for ADHD. The court takes as a given that the state court actions will litigate disputed issues such as the Oxford Defendants' intent and state of mind, whether hyperbaric therapy is an appropriate treatment for ADHD, the extent to which their actions constituted negligence or a form of criminal homicide, and related

11

issues of that nature. The court is not convinced, however – and Defendants did not explain – that any of those factual disputes matter for the purpose of determining whether an injury caused by the use of the hyperbaric chamber to treat ADHD, at a center that "advertised and sold treatment plans for hyperbaric treatment for over 100 conditions," is covered by Nationwide's professional services exclusion. *See* ECF No. 1-2, PageID.38. Defendants have provided no reason to think that question cannot be answered without reference to the factual disputes that will be litigated in state court, relying solely on the undisputed facts of the case. At oral argument, Defendants argued that it may be the case that no employee of the Oxford Center had a medical or other professional license, that the hyperbaric treatment was not "authorized," and that Thomas Cooper had no condition that could be "treated" by the use of a hyperbaric chamber. All of these arguments are more properly addressed when briefing the coverage issue directly. For now, it is enough to say that Defendants have not cited any cases to show that these are factual issues that would affect the outcome of the legal questions in the coverage analysis. This factor favors the exercise of jurisdiction.

**B.**     **Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue**

The "concern in considering the second *Grand Trunk* factor . . . is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). "Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court." Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *Id.* "Although a federal declaratory judgment does not resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party and whether it will have to indemnify that party should the state-court plaintiff prevail." *Cole's Place*, 936 F.3d at 399.  Because a ruling here would settle the controversy between Plaintiffs and their insureds as to whether it must provide coverage in the underlying action, that determination would be "useful" and clarify their legal relations.

13

**C.      Whether the declaratory judgment is being used improperly**

The third factor is meant to account for federal plaintiffs who file days before a state action is commenced in order to try to obtain a different forum.  But "when the plaintiff has filed his claim *after* the state court litigation has begun," courts "have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'  . . .  A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Scottsdale*, 513 F.3d at 558 (quoting citation omitted, emphasis added).  Here, this factor favors exercising jurisdiction.  Nationwide filed this case after the state court civil action was filed, there is no evidence of improper motive, and it is entitled to federal jurisdiction on the basis of diversity jurisdiction.

**D.     Whether the use of a declaratory action would**

**increase friction between the federal and state courts**

**or improperly encroach on state jurisdiction**

To determine whether the exercise of jurisdiction would increase

friction between federal and state courts, the court must consider three

additional sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008).

**i.     Whether the underlying factual issues are**

**important to an informed resolution of the case**

The first of these sub-factors focuses on whether the state court's

resolution of the factual issues in the case is necessary for the district

court's resolution of the declaratory judgment action.  "In the context of

actions seeking a declaration of the scope of insurance coverage, we

have recognized that such questions can sometimes be resolved as a

matter of law and do not require factual findings by a state court. . . . Indeed, the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action. . . . However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court. . . . In such cases, the exercise of jurisdiction would be inappropriate." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008) (cleaned up).

Here, as explained above, although the Cooper Defendants endeavor to explain why there are factual issues which would affect the issue of whether the professional services exception applies, it is not clear why the factual issues they identify would have any bearing on the applicability of the exclusion. Defendants have therefore not shown why the court should abstain from deciding the issue, and this sub-factor favors the exercise of jurisdiction.[2]

---

[2] The court notes that counsel for Defendant Gary Marken argued at oral argument that Marken, apparently some sort of maintenance employee for the Oxford Center, might have a type of claim that more properly fits under a businessowners policy rather than a professional liability policy. In essence, Marken argues that his role may be factually distinguishable from the other Defendants. The court rejects that argument for two reasons: First, counsel

16

**ii.    Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and**

The second sub-factor has to do with whether the state court is in a better position to rule on these factual issues as applied to state law. For example, "novel" issues of state law do not support jurisdiction. *Flowers*, 513 F.3d at 560.  Even if not novel, in general, state courts are generally in a better position to resolve insurance issues governed by state law.  *Mass. Bay*, 759 F. App'x at 440.  However, this consideration has less force in situations where the insurer is not a party to the state-court action and the insurance-coverage issue is not before the state court.  *Flowers*, 513 F.3d at 560.  Here, the insurer is not a party to the

---

forfeited the argument by failing to file his own motion or respond to the briefings filed.  Second, the exclusion appears to apply to bodily injury "arising out of" the various professional services listed, rather than to employees within a particular scope of employment.  *See Orchard, Hiltz & McCliment, Inc. v. Phx. Ins. Co.*, 676 F. App'x 515, 521 (6th Cir. 2017) (collecting examples); *see also Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, 551 F. Supp. 2d 1235, 1242 (D. Colo. 2007) ("[W]hen assessing whether the professional services exclusion applies to actions of a non-professional, it is the nature of the act and not the character or title of the actor that is critical to a determination of whether the factual allegations fall within the professional services exclusion").  Marken may address his argument – in writing – in response to a motion for declaratory or summary judgment, but he has not shown why jurisdiction should not be exercised over Nationwide's claim against him at this stage.

17

state court action and the present insurance coverage issue is not before that court, so that consideration favors exercising jurisdiction.

As for the novelty of the legal question, Defendants have not asserted that this question poses a novel application of state law, and Michigan law appears to provide clear guidance on the issue. "The construction and interpretation of an insurance contract is a question of law for a court to determine[.]" *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 353 (1999). "[C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992) (internal citation omitted). The court "cannot create ambiguity where none exists." *Id.*

Michigan courts have generally interpreted professional services exclusions broadly. *Orchard, Hiltz & McCliment, Inc. v. Phx. Ins. Co.*, 676 F. App'x 515, 521 (6th Cir. 2017) (citing *Am. Fellowship Mut. Ins. Co. v. Ins. Co. of N. Am.*, 90 Mich. App. 633 (Mich. Ct. App. 1979)). "They have even applied them to acts not involving a specialized skill if

18

such acts reasonably related to the overall provision of professional services." *Orchard*, 676 F. App'x at 521; *see also Singh, Rx, PLLC v. Selective Ins. Co. of S.C.*, No. 24-1678, 2025 LX 255195, at *6 (6th Cir. Apr. 14, 2025). While neither party has, at this point, pointed the court to application of this principle to use of a hyperbaric chamber or to unlicensed/unapproved medical treatment, Defendants have not cited any case law indicating that application of these state law principles to this situation would be novel or involve unsettled principles. *Compare* ECF No. 20, PageID.485-89 (Plaintiffs' brief, collecting cases accepting jurisdiction and applying the professional services exclusion). So the second sub-factor favors exercising jurisdiction.

### iii. Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008). On issues of insurance contract interpretation, the Sixth Circuit has indicated state courts are better

positioned to rule, and that state regulation of insurance implicates important state policies.  *See id.*  That is true even when it is "clear" how such an issue should be resolved under state law.  *See id.*  So this sub-factor, as in *Scottsdale*, slightly favors abstention.

The first and second sub-factors favor the exercise of jurisdiction, while only the third favors abstention.  This factor overall favors exercising jurisdiction over the declaratory judgment.

## E.      Whether there is an alternative remedy that is better or more effective

The fifth factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief.  *Grand Trunk*, 746 F.2d at 326.  The Sixth Circuit has sometimes found an alternative remedy is "better" than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions.  *See, e.g., Bituminous*, 373 F.3d at 816; *see also Travelers*, 495 F.3d at 273.  Under Michigan law, Mich. Comp. Laws § 500.3030, the liability insurer cannot be made a party to the original action brought by an injured person.  However, one of the alternative remedies available to the federal declaratory plaintiff is to

seek a declaratory judgment in state court. *Flowers*, 513 F.3d at 562. And Michigan law indeed does offer a declaratory remedy in state court. *See Safety Specialty Ins. Co. v. Cty. of Genesee*, 584 F. Supp. 3d 430, 443 (E.D. Mich. 2022). Whether a state court is better suited to apply state law depends in part on whether the legal question is squarely controlled by existing precedent or not. "The [state] courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment. The [state] courts might also have been able to combine the two actions so that all issues could be resolved by the same judge. However, given that [state] precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court was a clearly inferior forum to resolve the issue." *Flowers*, 513 F.3d at 562.

It is not clear that a federal declaratory action would be a clearly inferior forum to state court in this case. The only question presented, whether the Oxford Defendants' contact with Thomas Cooper falls within the scope of that exclusion, appears to be one of straightforward contract interpretation, on which Michigan law provides clear guidance.

21

Nor is a stay a better solution or likely to be more effective as a remedy. *Scottsdale* rejected a post-hoc indemnity action as a superior or effective remedy because it forces the insurer to wait for a significant period of time before determining its rights. "The remedy of an indemnity action, . . . would not have been a superior alternative . . . . In order to take advantage of such a remedy, Scottsdale would have been required to join the underlying state action, which it claims it was prevented from doing. Then, Scottsdale would have had to wait until the liability issue in the case was resolved before determining its obligations toward Flowers. Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Flowers*, 513 F.3d at 562. This factor is neutral in this action, or at best leans slightly against the exercise of jurisdiction.

### F.    Balancing

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Scottsdale*, 513 F.3d at 563. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). "The essential question is

always whether . . . issuing a declaration would be useful and fair."

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019). It is clear that the balance in this case weighs in favor of this court exercising jurisdiction. The first four factors all support such an exercise, while the fifth factor does not counsel against it. Federal adjudication of this declaratory judgment action is therefore appropriate.

## IV. CONCLUSION

Therefore, the court **DENIES** the Cooper Defendants' motion (ECF No. 16). It is **FURTHER ORDERED** that Plaintiffs shall have 60 days to file a motion for declaratory judgment or summary judgment as to the applicability of the professional services exclusion.

**SO ORDERED**.


Date: July 24, 2026                    s/F. Kay Behm
                                       F. Kay Behm
                                       United States District Judge

23