UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE INSURANCE COMPANY
OF FLORIDA and NATIONWIDE MUTUAL
INSURANCE COMPANY,

Case No. 4:25-cv-13720

Hon. F. Kay Behm

      Plaintiff,

v.

OXFORD HYPERBARIC OXYGEN THERAPY
CENTER LLC D/B/A THE OXFORD CENTER,
TAMELA PETERSON, JEFFREY MOSTELLER,
GARY MARKEN, ALETA H. MOFFITT, JAMES
COOPER and JUANA COOPER, as Personal
Representatives of the Estate of Thomas Cooper,
a Deceased Minor,

      Defendants.

_____

**COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE [ECF NO. 43] AS TO WHY HE SHOULD NOT BE SANCTIONED PURSUANT TO RULE 11(b)(2) and (c) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

NOW COMES Gregory Wix, and for this Court's Order to Show Cause as to Why He Should not be Sanctioned Pursuant to Rule 11(b)(2) & (c) of the Federal Rules of Civil Procedure hereby provides the following response.

This Honorable Court should not enter an order for Sanctions pursuant to Fed. R. Civ. P. 11(c). For the reasons set forth in more detail in the attached brief, the arguments presented by Counsel are warranted by the case law cited on ECF No. 16 from PageID.359-61 and/or are not frivolous arguments for extending, modifying,

{02020731.DOCX}

or reversing existing law or for establishing new law as required by Fed. R. Civ. P. 12(b)(2).

## BACKGROUND

On November 11, 2025, Nationwide Insurance Company filed a complaint for declaratory judgment in this Court. Nationwide Insurance sought a ruling that would relieve them from the burden of providing coverage and defending a lawsuit filed in the Michigan court relating to the death of Thomas Cooper at the Oxford Hyperbaric Oxygen Therapy Center. Counsel represented the estate of Thomas Cooper. In preparing the answer to Nationwide's complaint, counsel became aware of the *Wilton/Brillhart* abstention doctrine. Counsel contemplated filing a motion to dismiss in lieu of an answer but determined that a motion under Fed. R. Civ. P. 12(b) may not be an appropriate vehicle to raise the abstention doctrine. Nevertheless, counsel decided that he should file a motion to abstain contemporaneously with his answer so that there would not be an argument that he consented to the Court's jurisdiction or waived the issue.

As noted in the attached declaration, counsel used AI to identify the issue of abstention and may have used AI to review his writing for grammatical and stylistic corrections. He independently researched the case law applicable to the *Wilton/Brillhart* abstention doctrine and read the case cited before filing the motion.

Counsel believes that, to the extent that some of the cases cited resulted in rulings against abstention or ruled in favor of abstention, but against a particular factor, the facts of the instant case were distinguishable. Counsel focused on the facts of the instant case rather than attempting to distinguish the cited cases. This was a strategic decision made in order to file the motion as quickly as possible after the filing of the answer. In retrospect, this was the wrong decision as the failure to do so raised concerns with this Court, resulting in this show cause order. [ECF No. 43].

## DISCUSSION

**I.     RULE 11 SANCTIONS ARE INAPPROPRIATE FOR THE CITATIONS CITED BY COUNSEL FOR DEFENDANTS.**

When an attorney submits a pleading to a federal court, the attorney certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions **are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law** or for establishing new law;

> (3) the factual contentions have evidentiary support *or*, if specifically so identified, will likely have evidentiary support *after* a reasonable opportunity for further investigation or discovery."

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Sanctions under Rule 11 may include payment of part of all of a party's reasonable attorney fees, "an order to pay a penalty to the court," or other "nonmonetary directives" at the court's discretion. *Id.*

In this Court and all courts within the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the individual's conduct was reasonable under the circumstances.'"[1] What is "reasonable under the circumstances" is an "objective" standard.[2] As such, allegations of sanctionable conduct should not be viewed with "the wisdom of hindsight," but rather "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."[3]

Counsel's arguments in Defendants' Motion to Abstain and Dismiss or in the Alternative stay under the *Wilton/Brillhart* Abstention Doctrine are not sanctionable pursuant to Rule 11(b)(2). Counsel's conduct was reasonable under the circumstances as identified in Counsel's sworn declaration attached hereto. (**EXHIBIT 1**).

---

[1] *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1989)) (further citations omitted).

[2] *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990) (citing *INVST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d 391, 401 (6th Cir. 1987)). See also *Merrit v. Int'l. Ass'n of Machinists*, 613 F.3d 610, 626 (6th Cir. 2010), in which he appellate Court affirmed this Court's imposition of Rule 11 Sanctions only because Plaintiff's counsel's conduct was so careless in its pursuit of claims for eight individuals who had never even been associated with he defendant union or with any company whose employees were represented by the defendant union.

[3] *Id*. (quoting *INVST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d at 401).

## II.   COUNSEL RESPECTFULLY DISAGREES WITH THE COURT'S INTERPRETATION THAT AT LEAST SOME OF THE CITED CASES ARE IMPROPER OR THAT THEY FAIL TO STAND FOR THE PROPOSITION PUT FORTH BY COUNSEL

This Honorable Court's Order to Show Cause [ECF No. 43] requires Counsel submit a sworn declaration with an explanation of how his brief came to cite cases that do not stand for the propositions cited. **(EXHIBIT 1).** Additionally, the Order requires that undersigned counsel must submit, as another attachment to his submission, "a complete list of all case citations in ECF No. 16 from PageID.359-61." (*See* **EXHIBIT 2).**[4]

Counsel respectfully disagrees with the Court's interpretation that at least some of the cases on the pages identified are improper. As noted above, Counsel made a strategic decision to file the motion immediately after the answer to Nationwide's complaint for declaratory relief.  Counsel admits that the brief did not adequately explain his reliance on the cases cited and how the differences between the facts of this case and the cited cases supported Counsel arguments. Counsel provides the following detailed analysis as to why he cited the cases at issue and why sanctions would be improper.

---

[4] To comply with the Show Cause for Why Counsel should not be Sanctioned, the list of cases is attached as Exhibit 2, however the cases themselves are identified throughout the briefing along with a thorough explanation of how the case cited supports the proposition it is cited for as required by the Order.

### III.   COUNSEL'S CITATIONS SHOULD HAVE BEEN BRIEFED IN MORE DETAIL, BUT COUNSEL DOES NOT BELIEVE THEY ARE IMPROPER OR FRIVOLOUS.

#### A. *Counsel's Citations for the First Grand Trunk Factor.*

Counsel acknowledges that the *Scottsdale and Massachusetts Bay* cases ultimately held that the first factor weighed in favor of exercising jurisdiction. Counsel further acknowledges that *Cardinal Health,* did not analyze factors one and two because the parties had not challenged the district court's findings that the factors favored exercising jurisdiction. However, the underlying application of each of the cases supports the proposition put forth by Counsel for the Defendants as described herein.

The first *Grand Trunk* factor, settlement of the controversy, has created a split in the Sixth Circuit over the definition of controversy. "Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc*., 759 F. App'x 431, 435 (6th Cir. 2018) *citing Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008).  "One line of cases focuses on whether the declaratory judgment action will settle the coverage controversy regardless whether it will settle the underlying state-court action." *See Id*. The other line of cases reasons that "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they

do not settle the ultimate controversy between the parties which is ongoing in state court." *Id*.

The cases cited in Defendant's brief *Scottsdale, Massachusetts Bay, Cardinal Health*, and *Egnew*, looked at both approaches and suggested that the differing outcomes may have resulted from the factual differences in the cases adopting each approach. Together these cases all support the conclusion that factor one of *Grand Trunk* weighs against this Court exercising jurisdiction because they suggest that if resolution of the declaratory judgment action ***depends*** on ***factual issues*** that are being litigated in the state court, a federal declaration will not settle the controversy.

Each of the cases offered by Counsel required the analysis of a single question related to factor one: Did the resolution of the declaratory judgement action depend on the factual issues that were being litigated in state court? If the answer is "yes," the factor weighed against exercising jurisdiction, if the answer is "no" the factor weighed in favor of exercising jurisdiction. The fact that those cases answered "no" does not bely Counsel's argument that in this case where the answer is "yes" the court should not exercise jurisdiction.

Counsel should have added the facts of the cases cited to distinguish them from the case at issue.  As noted in Motion to Abstain, Defendants believe that the underlying policy exclusion for professional services implicates the very intense factual development that will necessarily take place in state court once the criminal

proceedings are concluded. As such, while counsel believes that the cases cited articulated the correct legal test, they are factual distinguishable for this case.

> **i.** **The *Scottsdale* Court Ultimately Found that Factor One Weighed in Favor of Exercising Jurisdiction, But Counsel Believes the Legal Analysis of the Court Supports Counsel's Proposition.**

In *Scottsdale*, a patient (Burke) had two sessions with a therapist (Flowers) in October; two additional sessions in March 2002; and a session in July 2002. Several days after this last session, Burke and Flowers began a sexual relationship which lasted from July through August of 2002. *Scottsdale* 513 F.3d., at 550 (6th Cir. 2008). The policy language at issue in that matter defined an "insured" for the Morton Center to include "[y]our employees and volunteers, but only for acts within the scope of their employment by you." *Id.* In *Scottsdale*, the court had enough factual development to establish that Flowers was not performing job duties at the time of the sexual relationship. The *Scottsdale* Court determined that the first factor points towards the exercise of jurisdiction because, "the issue involved a legal, not factual dispute….and thus, unlike the controversy in *Bituminous* did not require the district court to inquire into matters being developed through state court discovery." *Id* at 556 (6th Cir. 2008).

Here, counsel believes that, unlike the straightforward factual scenario in *Scottsdale,* the issues decided by this Court are still the subject of litigation in state

court and require additional factual development and full discovery before they can

be decided.[5]

> ### ii. The *Massachusetts Bay* Court Ultimately Found that Factor One Weighed in Favor of Exercising Jurisdiction, But the Legal Analysis of the Court Supports Counsel's Proposition Against Exercising Jurisdiction

The *Massachusetts Bay* case, citing *Scottsdale (v. Flowers),* discussed the two

lines of cases in the Sixth Circuit addressing the first *Grand Trunk* factor and their

belief that the difference between the two contrasting legal rules may result from

differences in the facts of the underlying cases.

While the court in *Massachusetts Bay* analyzed competing and/or seemingly

conflicting or inconsistent Sixth Circuit case law on the first *Grand Trunk* factor and

did not find that the district court abused its discretion; in doing so it noted the district

court's similar analysis of "our [Sixth Circuit] sometimes <u>conflicting case law</u>" and

the district court's factual determination that "this case was like *Scottsdale* in

material ways." *Massachusetts Bay Ins. Co., v. Christian Funeral Directors, Inc.,*

---

[5] Another consideration in citing this case was to show that even though the facts and policy language at issue in *Scottsdale* were much more straightforward than this matter, the district court had to modify its opinion and order because it had the potential to dramatically impact the state court case. Specifically, on July 25, 2006, the district court granted Scottsdale's motion and issued an opinion and order finding that Flowers' sexual affair with Burke was outside the scope of his employment as a matter of Kentucky law and concluding that Scottsdale "has no duty to extend coverage to Norman Flowers for any of the torts alleged in [the state tort action]." *Id* at 550–51. However, on September 27, 2006, Burke filed a Motion to Vacate and informed the district court that the Morton Center had attempted to use the district court's July 25, 2006, order to preclude litigation on the issue of the Morton Center's liability in state court. *Id* at 55. Based upon Burke's arguments, the district court chose to modify the language of its order concluding that Scottsdale "has no duty to extend coverage to Norman Flowers for his sexual affair with Kathleen Burke." *Id*. As such, this case is also illustrative of the dangers of early legal findings even when the factual inquiry and policy exclusion are straightforward. Counsel believes this danger has the potential to be exponentially more problematic here considering factual predicates that are necessary to make a meaningful determination on the policy language.

759 Fed. Appx. 431, 438 (6th Cir. 2018) (emphasis added).  The court noted that the defendants in that case argued that the district court should have followed the other line of cases "based upon the factual nuances of that particular matter."  *Id*.

Here, Counsel made similar arguments and believes the factual development needed in this matter is even greater than in *Massachusetts Bay*, which ultimately declined jurisdiction based mostly on the closely related fourth *Grand Trunk* factor, whether the use of declaratory action would increase friction between state and federal courts. The court ruled that exercising jurisdiction would require it to make too many factual determinations that could be in conflict with those determinations that should properly be made in state court. *Id.* at 441. The court's decision in *Massachusetts Bay* relied on the same question counsel focused on in his brief: Does the resolution of the declaratory judgement action depend on the factual issues that were being litigated in state court? Counsel believed, and continues to believe, that this is the operative question that should determine whether a federal court should take jurisdiction for declaratory relief.

> **iii.    The *Cardinal Health* Court Did Not Analyze The First Factor Directly, But the Legal Analysis of the First Factor is Addressed in the Court's Application of the Fourth Factor and Fully Supports Counsel's Proposition**

*Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 29 F.4th 792 (6th Cir. 2022),* cited by Counsel does not explicitly address the first factor, however, it applies essentially the same analysis in consideration of the Fourth

Factor. Again, the court cited directly to the *Scottsdale* case, and in analyzing the application of the first factor explains, "When parties seek a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.,* at 799. (internal quotations omitted)

While *Cardinal* did not have any parallel state court proceedings, the court noted that the parties disputed whether "the conduct alleged by the opioid plaintiffs—failing to report or detect orders of suspicious or excessive orders of opioids, failing to stop the fulfillment of such orders, and failing to oppose improper conduct of other defendants in the opioid litigation—constitutes an "occurrence" under the policy."  The *Cardinal* Court found that "[t]hese dynamic questions and theories of liability under Ohio state law implicate concerns of comity, and it is not an abuse of discretion for a district court to hold they first need to be decided by Ohio state courts." *Id*

While not completely analogous to the case at issue, *Cardinal* essentially involved a factual dispute regarding whether conduct constituted an "occurrence" under the policy.  Counsel here believes this case is supportive of his arguments that that factual development of state law claims is necessary before this Court can rule as a matter of law whether certain policy exclusions apply.  Counsel also believes that the analysis under the fourth factor necessarily incorporates part of the analysis

required under the first factor.  The Cardinal court noted that **this subfactor points against exercising jurisdiction** when "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.*

### iv.  The *Egnew* Court Found that Factor One Weighed in Favor of Not Exercising Jurisdiction, and Fully Supports Counsel's Proposition.

The *Egnew* court, like *Scottsdale* and *Massachusetts Bay*, also recognized the split in authority and believed that the inconsistency in these decisions can be reconciled by considering their distinct factual differences and provided perhaps the best analysis of that theory. *Auto Owners Ins. Co. v. Egnew*, 152 F.Supp.3d 868, 874 (E.D. KY 2016).

> "In *Northland*,[6] 'the plaintiff was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court.' On the other hand, 'the insurance coverage controversy' in *Bituminous*[7] 'rested on a fact-based question of state law regarding whether the plaintiff in the estate action was actually an employee of the defendant,' which was already being considered in two separate state court proceedings."

*Egnew,* 152 F.Supp.3d, at 874.

The *Egnew* court analyzed the first factor and determined that it weighed against exercising jurisdiction:

---

[6] *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003).
[7] *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004)

In summary, to provide the declaratory relief that Auto-Owners and Owners request, the Court would have to determine if Insured Defendants' actions constitute an "occurrence" under the policies, which inevitably raises fact-based questions of state law, namely, whether or not the conduct giving rise to the alleged damages came about fortuitously or intentionally. Given the nature of the various claims at issue in the LEEP Lawsuit, **there is a strong possibility that many of these same factual questions will also be addressed by the Jefferson County Circuit Court. Therefore, consistent with the Sixth Circuit's holding in Bituminous, and this Court's previous application thereof, the Court finds that a declaratory judgment in this matter would not settle the controversy.** Accordingly, the first factor weighs against this Court exercising its jurisdiction under Section 2201.

*Id.* at 876. (emphasis added).

Counsel believes the same concerns are present in this matter regarding several factual questions that will necessarily be addressed in state court, especially pertaining to professional services.

### B. *Counsel's Citations for the Second Grand Trunk Factor Are Appropriate and Stand for the Propositions for Which they are Cited.*

*Grand Trunk* sets out five factors for analysis as cited in Defendant's brief and the second factor is whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.[8] Counsel further cited *Scottsdale*, as it notes that the "second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it." *Scottsdale,* 513 F.3d, at 556, citing *Travelers,* 495 F.3d at 271-72. This proposition is reiterated in *Auto-Owners*

---

[8] The Order to Show Cause notes "the brief includes citations to cases that, to be fair, recite the relevant legal rule Defendants propose." [ECF No. 43, PageID. 674]. Accordingly, Counsel for Defendants' presumes that the Court takes no issue with the *Grand Trunk* factors articulated throughout the brief.

{02020731.DOCX}                                             13

*Ins. Co. v. Trip Cat, LLC.,* the "first two factors are closely related and often considered together." *Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764 (E.D. Ky. 2020). Accordingly, Counsel relies on and incorporates by reference the arguments made in the preceding sections as if fully incorporated herein. *Supra.*

In *Auto Owners Ins. Co. v. Trip Cat, LLC*, the court held "that the first and second factors weigh against exercising jurisdiction." *Id.* at 771. In so holding, the *Trip Cat* court reasoned that "to provide the declaratory relief that Auto Owners requests, the Court would have to determine if Todd's actions constitute an "occurrence" or an "intentional act" under the policy, which inevitably requires fact-finding on the issues of fortuity and intentionality." *Id*.

Counsel believes *Trip Cat* can be fairly read to indicate that the conduct of the insured created a significant factual question that the court believed was best handled by the state court.  Counsel believes the fact presented in this case presents a similar factual issue, which is centered around the <u>conduct</u> of the insureds and whether that conduct amounted to the provision of <u>professional services</u>.

In *Brit UW Ltd. v. Smith*, 401 F. Supp. 3d 804 (E.D. Ky. 2019), the court noted that the Sixth Circuit observed that "[i]n general, courts tend to consider this factor with the first factor, ***reaching the same conclusion for both.***" *Id.* at 813 *citing Mass. Bay,* 759 Fed. Appx. at 438 (quoting *Scottsdale,* 513 F.3d at 557). The *Brit* court also noted "that a minority of Sixth Circuit precedents "have treated [the second

factor] as distinct from the first factor" *Id.* at 813, *citing Mass. Bay*.  Ultimately, the *Brit* court found against exercising jurisdiction under the first factor but then followed the minority and analyzed the second factor holding that there was little risk that a ruling on the insurance coverage issue would be duplicated in the state court action which is why that factor favored exercising jurisdiction.

Here, however, as Counsel argued, there is a great risk that the factual predicates necessary for a ruling on this insurance coverage issue will be duplicated in the state court action. Counsel believes that even under the *Brit* analysis this factor weighs in favor of this Court declining jurisdiction because the factual disputes which will necessarily determine the coverage availability.

This analysis is further supported in the pages directly cited in Defendants' Motion. In analyzing the fourth *Grand Trunk* factor, the Sixth Circuit considers three subfactors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgement action. *Britt UW Ltd.,* 401 F.Supp. at 816 (citing *Scottsdale,* 513 F.3d at 560(quoting *Bituminous,* 373 F.3d at 814-815.)

In considering the subfactors, the *Britt* court expressly refers back to earlier *Grand Trunk* factors, noting that where "declaratory judgment would involve deciding unsettled questions of state insurance law, which are intertwined with factual issues likely to be considered by the state court in the underlying tort action," it is inappropriate for the court to exercise jurisdiction. *Id.* at 816 (citing to its own analysis in section II.B: Factor One: Settlement of the controversy)."

Again, the determinative question is: Does the resolution of the declaratory judgment action depend on the factual issues that were being litigated in state court?

C. ***Counsel's Citations for the Third Grand Trunk Factor are Appropriate and are Legally Sound.***

Counsel cited only two cases for the third *Grand Trunk* factor: *Travelers Indem. Co v. Bowling Green Prof'l Assocs.,* 496 F.3d 266 (6th Cir. 2007), and *Cincinnati Specialty Underwriters Ins., Co v. Central Kentucky Lodging, Inc.*, 565 F. Supp. 3d 912 (E.D. Ky. 2021).

In *Cincinnati Specialty Underwriters Ins., Co.,* the Court in considering the third factor notes that "courts will give plaintiffs the 'benefit of the doubt that no improper motive fueled the filing of the action' where the federal declaratory action is filed 'after the state court action has begun." *Cincinnati spec. Underwriters Ins., Co,* 565 F. Supp.3d, at 923 (citing: *Scottsdale,* 513 F.3d, at 558)(quoting *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004). *Cincinnati* further explains that the Sixth Circuit has found that the third factor "should be afforded little weight in cases

where…there is no evidence of procedural fencing." *Cincinnati,* 565 F. Supp.3d, at 925. (citing *Mass bay Ins. Co., v. Christian Funeral Dirs., Inc.,* 759 F. App'x 431, 439 (6th Cir. 2018)(citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC,* 495 F.3d 266 (6th Cir 2007). That specific paragraph within *Cincinnati* references Counsel for the Defendants' other citation to *Travelers.*

Counsel for the Defendant cited these two cases for the proposition that "the Sixth Circuit has recognized that insurer-filed declaratory actions ***brought under these circumstances*** often reflect forum selection rather than necessity." [ECF No.: 16, PageID. 361]. Upon reflection, counsel agrees that this was an overstatement. Counsel intended to argue that this case had key procedural differences from *Cincinnati* and *Travelers*; the brief should have stated: "While the Sixth Circuit will not impute improper motive where there is no evidence of procedural fencing, the facts of this case differ in important ways from the typical request for declaratory relief made in insurance indemnification disputes."

However, Counsel's argument here, while perhaps poorly worded, is not inaccurate: where there ***is*** evidence of an improper motive, forum selection, or race to judgment, the third *Grand Trunk* factor weighs against jurisdiction. Counsel's error is that he failed to include some of the facts that show Plaintiff's improper motive. Counsel did brief the fact that the state court had stayed this matter based upon Fifth Amendment concerns of the criminal defendants.  Counsel acknowledges

that those insureds are named in this case, but because they are still asserting their Fifth Amendment rights, and discovery in violation of those rights is prohibited by state court order, they are really parties in name only.

Counsel should have also noted that this Federal Action for declaratory relief was filed on **November 20, 2025**. On **November 21, 2025**, the Motion for Stay of Proceedings in the underlying civil suit was filed.  The timing of this complaint and the motion for a stay enjoining defendants from obtaining discovery that would impact coverage in the underlying state case could be viewed as designated and calculated litigation strategy.

In the cases cited by Counsel throughout the briefing, including *Scottsdale, Cincinnati, and Massachusetts Bay,* the action was brought **years** after the underlying State Action when the facts were more developed and the court was in a better position to evaluate the coverage dispute while minimizing the risk of inconsistent, duplicative or unnecessary findings of fact. In each of those cases, the Court reasoned that there was no evidence of improper motive. The actions of Plaintiff in the instant case when viewed through an adversarial lens, can be fairly argued as "unfair or unseemly" or to create a race to judgment. *U.S Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 Fed.Appx. 562 (6th Cir. 2006) ("The indemnification issue was admittedly not yet before the state court, nor was there any evidence in the record of bad faith on behalf of U.S. Fire in filing this action. Nevertheless . . .

because the chain of events already in motion in state court ... leads ineluctably to that very issue being brought before the state court, it was apparent that U.S. Fire was trying to secure a favorable ruling here, rather than take the risk that it will not fare as well in *Albex's* inevitable state court action against it.") (internal quotations omitted).

## CONCLUSION

Litigation is, by its very nature, an adversarial process. Every day, parties present competing interpretations of the same facts and legal authorities, each advocating for the result most favorable to their client. Likewise, trial court decisions are routinely appealed on the grounds that the law was misapplied, or the legal analysis was flawed. The fact that the Court ultimately rejects or disagrees with counsel's legal arguments does not render those arguments frivolous or indicative of bad faith. Indeed, where the Court itself acknowledges that the challenged citations may simply reflect aggressive advocacy, the imposition of Rule 11 sanctions is unwarranted. Rule 11 was never intended to punish zealous advocacy or reasonable disagreements over the interpretation and application of the law.

Likewise, the Federal Rules of Civil Procedure do not prohibit attorneys from utilizing AI-assisted tools to assist in the preparation of legal filings, just as they do not prohibit the use of legal research databases, treatises, or law clerks. Rule 11 focuses on the attorney's certification that the legal and factual contentions presented

to the Court are warranted after a reasonable inquiry, not on the method by which counsel conducts research or drafts a brief. This is not a case in which AI was used as a substitute for an attorney's independent judgment. Sanctions are appropriate in cases where counsel files pleading in which AI legal research creates hallucinated cases or where AI drafts a brief and misrepresents the holding of cases. This did not happen in this case. As noted in his declaration, Counsel used AI to start researching the issue. Counsel then pulled and read cases that cited the leading cases dealing with the abstention doctrine. Counsel prepared the motion and likely, as is his practice, used AI to check grammar and rewrite awkwardly worded portions of the brief. Counsel admits that at times his advocacy was aggressive. At other times Counsel should have taken more time to distinguish the facts of his case from cited cases that decided issues contrary to the outcome Counsel desired in this case.

The touchstone of Rule 11 is reasonable attorney conduct, not the particular tools employed in the practice of law. The question under Rule 11 is not whether counsel used AI; it is whether counsel fulfilled the duty to conduct a reasonable inquiry into the law and facts before presenting a filing to the Court. Counsel did that here.

WHEREFORE, for the foregoing reasons, Counsel for the Defendants respectfully requests that this Honorable Court discharge its Order to Show Cause, decline to impose sanctions under Fed. R. Civ. P. 11 or its inherent authority, and grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

/s/Gregory W. Wix
GREGORY W. WIX (P65424)
*Attorneys for Defendant James and Juana Cooper, as Personal Representatives of the Estate of Thomas Cooper, Deceased*
19390 W. Ten Mile Road
Southfield, MI 48075
g.wix@fiegerlaw.com

Dated: August 7, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Myra Manalo*
Myra Manalo